DONALD FISHER       *       NO. 2020-CA-0242

VERSUS       *

      COURT OF APPEAL

MARGARET T. VILLERE AND       *
ABC INSURANCE COMPANY       FOURTH CIRCUIT

      *

      STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-09197, DIVISION "L"
Honorable Kern A. Reese, Judge
* * * * * *
**Judge Paula A. Brown**
* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Paula A. Brown, Judge Dale N. Atkins)

**BELSOME, J., CONCURS IN RESULT**

Matthew A. Sherman
Nicholas R. Varisco
Patrick R. Follette
CHEHARDY SHERMAN WILLIAMS MURRAY RECILE STAKELUM & HAYES, L.L.P.
One Galleria Boulevard, Suite 1100
Metairie, LA 70001

      COUNSEL FOR PLAINTIFF/APPELLANT

Allen J. Krouse, III
Suzanne Marie Risey
FRILOT L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, LA 70163

      COUNSEL FOR DEFENDANT/APPELLEE

           **AFFIRMED**
           **February 24, 2021**

This civil appeal arises from the district court's January 24, 2020 judgment, granting Defendant/Appellee's, Margaret Villere ("Ms. Villere"), motion for summary judgment against Plaintiff/Appellant, Donald Fisher ("Mr. Fisher"), and dismissing all of Mr. Fisher's claims with prejudice. After our *de novo* review, the district court's judgment is affirmed.

### FACTUAL & PROCEDURAL BACKGROUND

Ms. Villere hired AT&T to upgrade her Direct TV service. On October 14, 2017, Mr. Fisher, a technician with AT&T, performed the work, which required him to climb on Ms. Villere's roof. When Mr. Fisher was descending the ladder—which he brought with him, set up, and used during the installation—it slipped from off the roof and from underneath Mr. Fisher, causing him to fall and sustain severe injuries.

Mr. Fisher filed a petition for damages against Ms. Villere, alleging that the property, over which Ms. Villere had custody and guarde, created an unreasonably dangerous condition, about which Ms. Villere failed to warn Mr. Fisher, citing La.

1

C.C. arts. 2317[1] and 2696.[2] Mr. Fisher contended that the ladder he was using slipped because the surface of the brick patio area on Ms. Villere's property, where he placed the ladder, was wet. Mr. Fisher alleged Ms. Villere was negligent in the following respects:

a) Failing to give warnings of the dangerous condition;
b) Failing to properly inspect and maintain the area in question to discover the dangerous condition;
c) Failing to warn of inherent dangers associated with things under its guarde, custody and control;
d) Failing to do what was necessary to keep the area free from any dangerous conditions;
e) In allowing a hazardous condition or defect to exist, which presented an unreasonable risk of harm to its tenants and/or guests; and
f) Other acts of negligence as may be shown at the trial of this matter.

In addition, Mr. Fisher invoked the doctrine of *res ipsa loquitur*.[3]

---

[1] La. C.C. art. 2317, which will be more fully discussed *infra*, includes the elements necessary to prove premises liability.

[2] La. C.C. art. 2696 provides that "[t]he lessor warrants the lessee that the thing is suitable for the purpose for which it was leased and that it is free of vices or defects that prevent its use for that purpose", and "[t]his warranty also extends to vices or defects that arise after the delivery of the thing and are not attributable to the fault of the lessee."

[3] In *Linnear v. CenterPoint Energy Entex/Reliant Energy*, 06-3030, p. 6 (La. 9/5/07), 966 So.2d 36, 41 (quoting *Cangelosi v. Our Lady of the Lake Regional Medical Center,* 564 So.2d 654 (La. 1989)(on rehearing)), the Louisiana Supreme Court explained the doctrine of *res ipsa loquitur*:

The doctrine of *res ipsa loquitur* applies in cases where the plaintiff uses circumstantial evidence alone to prove negligence by the defendant. *Cangelosi* [*v. Our Lady of the Lake Regional Medical Center,* 564 So.2d 654 (La.1989)]. . . . As explained in *Cangelosi, supra*, the doctrine applies when three criteria are met. First, the injury is the kind which ordinarily does not occur in the absence of negligence. While the plaintiff does not have to eliminate all other possible causes, he must present evidence indicating at least a probability that the accident would not have occurred absent negligence. Second, the evidence must sufficiently eliminate other more probable causes of the injury, such as the conduct of the plaintiff or a third person. The circumstances must warrant an inference of negligence. Third, the negligence of the defendant must fall within the scope of his duty to plaintiff. This may, but not necessarily, be proved in instances where the defendant had exclusive control of the thing that caused the injury.

On November 13, 2019, Ms. Villere filed a motion for summary judgment, seeking dismissal of all claims asserted by Mr. Fisher. She asserted Mr. Fisher could not prove the elements of La. C.C. arts. 2317, 2296 and *res ipsa loquitur*.[4] Ms. Villere argued in pertinent part that: (1) there was no evidence that an unreasonably dangerous condition existed on her property to support Mr. Fisher's claim pursuant to La. C.C. art. 2317.1;[5] (2) there was no evidence the brick patio area where Mr. Fisher placed his ladder was wet as he alleged; (3) even if the surface was wet, it did not pose an unreasonably dangerous condition to Mr. Fisher under the circumstances of the case and in the view of Mr. Fisher's status as an experienced satellite installation technician; (4) she did not owe Mr. Fisher a duty because Mr. Fisher could not prove an unreasonably dangerous condition existed on her property at the time of the incident; and (5) Mr. Fisher's own conduct played a role in the incident. In support of her motion for summary judgment, Ms. Villere attached several exhibits, including her own deposition testimony and that of Mr. Fisher.

*Mr. Fisher*

Mr. Fisher was employed by AT&T as a satellite installation technician. As of October 2017, Mr. Fisher had four years of experience installing satellite dishes. Mr. Fisher testified his work required him to frequently climb a ladder. As an AT&T employee, he underwent competency and safety training, which included

---

Mr. Fisher fails to brief this issue on appeal, thus, it is deemed abandoned. Uniform Rules – Courts of Appeal, Rule 2-1

[4] Ms. Villere also argued that La. C.C. art. 2696 (*supra* n. 2) did not apply, and Mr. Fisher did not oppose those arguments.

[5] La. C.C. art 2317.1, which will be more fully discussed *infra*, outlines the responsibilities imposed on a landowner.

3

ladder competency evaluations approximately every three months. He was trained in ladder safety and slip/trip and fall prevention policies and procedures. He explained that AT&T's goal was to have zero ladder accidents.

Mr. Fisher testified that on October 14, 2017, he arrived at Ms. Villere's house to replace her satellite dish. Ms. Villere explained to him the problems she was having. After the brief conversation with Ms. Villere, he determined that the satellite dish was located on top of the house, necessitating the use of his twenty-foot adjustable combination ladder that he had brought with him. Mr. Fisher asked Ms. Villere whether she had any dogs, and she advised she had two dogs inside. Mr. Fisher testified that Ms. Villere stated that she had "cleaned up, so you're good." Mr. Fisher retrieved the ladder, and other equipment from his truck. He recalled he checked the bottom of the ladder where he had positioned it, and climbed the ladder to the roof to access the issue. He stated that when he put the ladder up, he thought, "[he] was in a very safe spot." Mr. Fisher initially testified that he thought the ladder did not have clamps, then stated there were two clamps on the ladder. While he was descending the ladder, it "slipped" from under him, and he fell backwards. He had ascended and descended the ladder more than once before he fell. After the fall, Mr. Fisher said he rolled over and saw that the bricks were wet. He stated he could not tell if the bricks were wet before he set up his ladder because "it's New Orleans brick" which "doesn't look wet" but "does remain slimy."

*Ms. Villere*

Ms. Villere testified that after Mr. Fisher arrived, she pointed him to the backyard to work, and she went inside. Ms. Villere did not supply Mr. Fisher with the ladder or tell him where to place it. Ms. Villere recalled that she looked out

4

from an upstairs window occasionally to check Mr. Fisher's progress. She observed her old satellite dish sitting on the ground, which led her to believe that Mr. Fisher had climbed down the ladder at least once, although she did not see him ascend or descend the ladder. Soon after, Ms. Villere heard "a crash." She went outside to see what happened and saw Mr. Fisher on the ground moaning. She did not witness his fall.

Ms. Villere testified that her backyard is comprised entirely of bricks, and her two dogs go to the bathroom in the backyard on the bricks. To clean up the dog poop, she said they physically scoop it up. She said on the date of the incident, "[they] made sure the dog poop was cleaned up so that way [Mr. Fisher] did not walk through anything." She also stated the bricks were pressure washed approximately three times per year, and she would hose down the bricks as needed. Ms. Villere testified that she knew "for a fact" that the backyard had not been pressure washed or hosed off that morning, and there were two drains in the middle of the brick, so there is never any standing water on the patio. She said that before Mr. Fisher arrived, she cleaned the patio, by physically scooping the dog poop, and no water was used. Ms. Villere disagreed "one hundred percent" with Mr. Fisher's testimony that the bricks were wet that morning. When asked whether she could have hosed the patio down the night before the incident, Ms. Villere responded, "not likely." When asked again whether the patio could have been hosed down the night before, Ms. Villere responded, "It could have been," but "I'm not one to go and hose it down at night."

A hearing on the motion for summary judgment was held on January 10, 2020. At the conclusion of the hearing, the district court granted Ms. Villere's motion for summary judgment in open court. On January 24, 2020, the judgment

was signed, dismissing all of Mr. Fisher's claims with prejudice. This timely devolutive appeal followed.

**DISCUSSION**

On appeal, Mr. Fisher assigns two errors for review, which we summarize as follows: (1) the district court erred in granting Ms. Villere's motion for summary judgment and dismissing all of Mr. Fisher's claims as genuine issues of material fact remain regarding the alleged unreasonably dangerous condition on Ms. Villere's property; and (2) the district court erred in dismissing his claim of negligence, because Ms. Villere did not raise it as an issue in her motion for summary judgment.

This Court, in *Cosey On Behalf of Hilliard*, 19-0785, 2020 WL 6687515, at *2 (La. App. 4 Cir. 11/12/20)(citing La. C.C.P. art. 966(A)(2)), held that the summary judgment procedure is favored and "is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969." In *Szewczyk v. Party Planners West Inc.*, 18-0898, p. 6 (La. App. 4 Cir. 5/29/19), 274 So.3d 57, 61 (citations omitted), this Court explained that "[a]ppellate courts review the grant or denial of a motion for summary judgment *de novo*, employing the same criteria that govern the district court's determination of whether summary judgment is appropriate." In conducting a *de novo* review, the reviewing court examines the facts and evidence in the record, without regard or deference to the trial court's judgment or reasons for judgment. *Cosey*, 19-0785, 2020 WL 6687515, at *3 (citation omitted). Louisiana Code of Civil Procedure Article 966(A)(3) provides that "[a]fter an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and

6

supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." "'A fact is material when its existence or nonexistence may be essential to the plaintiffs [sic] cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. . . .'" *Chapital v. Harry Kelleher & Co., Inc.,* 13-1606, p. 5 (La. App. 4 Cir. 6/4/14), 144 So.3d 75, 81 (quoting *Mandina, Inc. v. O'Brien,* 13-0085, p. 9 (La. App. 4 Cir. 7/31/13), 156 So.3d 99, 104). Whether a fact is material is a determination that is based on the applicable substantive law. *Roadrunner Transp. Sys. v. Brown*, 17-0040, p. 7 (La. App. 4 Cir. 5/10/17), 219 So.3d 1265, 1270 (citation omitted).

Generally, the burden of proof for a motion for summary judgment rests on the mover. La. C.C.P. art. 966(D)(1) provides:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

With these precepts in mind, we turn to Mr. Fisher's claims.

*Premises liability*

Mr. Fisher contends that genuine issues of material fact remain regarding the alleged unreasonably dangerous condition of Ms. Villere's property, which is the basis of his damage claim under La. C.C. art. 2317. He argues that Ms. Villere's testimony that she hosed down the area as needed and that the area "could have

7

been" hosed down the night before the incident, establishes that genuine issues of material fact exist regarding the condition of the property on the day of the incident.

Ms. Villere responds that even assuming the brick was wet, which she denies, it did not pose an unreasonably dangerous condition to Mr. Fisher, under the circumstances of the case and in view of his status as an experienced satellite installation technician. Ms. Villere argues that because Mr. Fisher cannot prove an unreasonably dangerous condition existed on her property at the time of the incident, she owes him no duty. We agree.

"The threshold issue in any negligence action is whether the defendant owed the plaintiff a duty, and whether a duty is owed is a question of law." *Bufkin v. Felipe's Louisiana, LLC*, 14-0288, p. 5 (La. 10/15/14), 171 So.3d 851, 855 (citation omitted). Louisiana Civil Code Article 2315 provides, "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. . . ." La. C.C. art. 2317. Where damages are claimed as a result of vices or defects in the thing within one's custody, La C.C. art. 2317.1 provides:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. . . .

To successfully prove liability pursuant to La. C.C. arts. 2317 and 2317.1, the plaintiff must prove each of the following elements:

> (1) the thing was in the [owner or ] custodian's custody or control; (2) it had a vice or defect that presented an unreasonable risk of harm; (3) the defendant knew or should have known of the unreasonable risk of harm; and (4) the damage was caused by the defect.

*Szewczyk*, 18-0898, p. 7, 274 So.3d at 62. Once these elements are proven, the plaintiff's burden requires proof that the owner knew or should have known of the ruin, vice, or defect which caused the damage; that the owner could have prevented the damage by the exercise of reasonable care; and that the owner failed to exercise such reasonable care. *Id.,* 18-0898, pp. 7-8, 274 So.3d at 62 (citations omitted). Failure of the plaintiff to prove any one of the above factors is fatal to the case. *Id.*, 18-0898, p. 8, 274 So.3d at 62.

Because Mr. Fisher would bear the burden of proof at a trial on this matter, Ms. Villere, as the mover, had to point out the absence of factual support for one or more elements essential to Mr. Fisher's claims. Mr. Fisher had to produce factual support sufficient to establish the existence of a genuine issue of material fact or that Ms. Villere was not entitled to judgment as a matter of law. Consequently, under our *de novo* review, we will examine each of the elements needed to prove a claim under La. C.C. arts. 2317 and 2317.1.

*The thing was in the owner or custodian's custody or control*

The accident occurred at Ms. Villere's home. However, as noted by Ms. Villere, although the incident occurred on her property, she did not have custody or control over Mr. Fisher's ladder or where he placed it.

*Premises had a vice or defect that presented an unreasonable risk of harm*

Mr. Fisher asserts that material issues of fact exist concerning the unreasonable condition of Ms. Villere's property on the day of the incident, particularly whether the brick was wet. To determine whether a condition is

9

unreasonably dangerous, the Supreme Court, in *Dauzat v. Curnest Fuillot Logging Inc.*, 08-0528, p. 5 (La. 12/2/08), 995 So.2d 1184, 1186-87, set forth a four-factor test:

> (1) The utility of the complained-of condition; (2) the likelihood and magnitude of harm, which includes the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of its social utility, or whether it is dangerous by nature.

Accordingly, we will apply the four-factor test to the facts and circumstances of the case *sub judice*.

The first factor considers the utility of the complained-of condition. Assuming *arguendo* the bricks were washed down, the utility of that would be to ensure that the patio was free of dog feces, which Mr. Fisher could have slipped on.

As to the second factor, the likelihood and magnitude of harm, which includes the obviousness and apparentness of the condition, whether something is wet or dry should be obvious and apparent in broad daylight, despite Mr. Fisher's testimony to the contrary.[6] In addition, Mr. Fisher's testimony indicated he carefully inspected the area and he decided where to place the ladder; thus, even if the bricks were wet, it was obvious and should have been easily observed by him. Similarly, in *Barrow v. Brownell*, 05-1627 (La. App. 1 Cir. 6/9/06), 938 So.2d 118, the appellate court affirmed summary judgment in favor of the homeowner and against the plaintiff, who was injured when he fell off a ladder while taking down Christmas lights on the homeowner's property. The Court, in affirming the

---

[6] Mr. Fisher submits, in passing, that the alleged unreasonably dangerous condition cannot be deemed open and obvious because he could not have noticed the condition until he was lying on the ground. In response, Ms. Villere argues that Mr. Fisher's speculation that the whole yard was wet is unsupported by any evidence, but even if it was supported by evidence, it would constitute an open and obvious condition rather than an unreasonably dangerous condition.

summary judgment, considered the undisputed facts that the homeowner did not instruct the plaintiff on how to perform the requested task, that the placement of the ladder was solely the plaintiff's decision, and the plaintiff's testimony that if he thought the placement of the ladder was unsafe, he would found another way to complete the task. *Id.*, 05-1627, p. 7, 938 So.2d at 123.

With respect to the third factor, the cost of preventing the harm, this factor does not weigh in favor of either party.

In regards to the fourth factor, the nature of Mr. Fisher's activities in terms of its social utility or whether it is dangerous by nature, Mr. Fisher's activity of climbing onto roofs for a living is indeed dangerous by nature. In establishing whether a condition presents an unreasonable risk of harm, courts consider the circumstances and the particular plaintiff involved, and any specialized or superior knowledge that plaintiff may possess. *Celestine v. Union Oil Co. of California*, 94-1868 (La. 4/10/95), 652 So.2d 1299.[7] In *Fontanille v. Levy*, 11-0882, 2012 WL 4754154, at *5 (La. App. 4 Cir. 1/25/12), a case analogous to this case, this Court affirmed the district court's grant of summary judgment in favor of the homeowner and against a repair company's employee injured, while working at the defendant homeowner's property. The *Fontanille* Court concluded that "[the plaintiff's] status as a repairman 'is a significant factor in determination of whether a risk is

---

[7] In *Celestine* the Supreme Court, in affirming the Court of Appeal's reversal of the district court's judgment, determined the district court failed to adequately instruct the jury of the significance of the plaintiff's status as a repairman. As such, the deference normally accorded to the fact finder was not given to the jury. The Supreme Court found that, in light of the plaintiff's status as a repairman to fix the broken handrail in which he was hired to fix was not unreasonable risk. *Id.*, 94-1868, p. 11, 652 So.2d at 1306.

unreasonable.'" *Id.* (quoting *Celestine,* 94-1868, p. 11, 652 So.2d at 1305).[8] In the case *sub judice*, we conclude that Mr. Fisher's status as a repairman and his extensive ladder training is a significant factor in determining whether a risk is unreasonable. *See Celestine*, 94-1868, p. 11, 652 So.2d at 1305. The record evidence shows: (1) Mr. Fisher had four years of experience installing satellite dishes without prior incidents; (2) he underwent numerous competency tests relating to ladder safety, which he passed with extremely high scores; (3) he conducted a visual inspection of the area before placing his ladder in the area where he determined was a safe; and (4) he ascended and descended the ladder more than once before his fall.

Based on our *de novo* review of the four-factor test, we conclude Ms. Villere pointed out Mr. Fisher's lack of factual support to prove that her property created an unreasonable risk of harm. It is well-settled that summary judgment is not precluded in cases where a plaintiff is unable to produce factual support for the

---

[8] The plaintiff in *Fontanille* was employed as a carpenter's helper by a contractor, which the homeowner contracted with to repair two rental properties the homeowner owned. The plaintiff alleged that while repairing the property, he personally approached the homeowner and informed her that the property was rotten and the "dilapidated dangerous condition of the property" presented a great risk of harm to the other employees of the contractor and to himself. *Id.*, 11-0882, 2012 WL 4754154, at *1. The homeowner allegedly ordered the plaintiff to continue working and to finish the work promptly. Plaintiff was later injured when a door, incased in rotten wood, fell and landed on his arm as a co-worker attempted to remove the door. The homeowner claimed she was neither present at the job site nor directed the work of any of the contractor's employees. The plaintiff filed suit, alleging causes of action in negligence and strict liability. This Court found that the plaintiff failed to establish "that he can meet his burden of showing that [the homeowner's] property was unreasonably dangerous." *Id.*, 11-0882, 2012 WL 4754154, at *5. The Court, then applying the four-factor unreasonably dangerous test set-forth in *Dauzat*, [995 So.2d 1184], concluded that the homeowner pointed out the absence of factual support for an essential element of the plaintiff's claim for which he has the burden of proof a trial. Accordingly, this Court affirmed the grant of summary judgment in favor of the homeowner, concluding the plaintiff failed to meet his burden of showing the homeowner's property was unreasonably dangerous.

allegation that a condition is unreasonably dangerous.[9] Furthermore, Mr. Fisher failed to rebut Ms. Villere's assertion that whether the brick was wet or dry was not a material issue of fact to defeat the summary judgment motion, especially in light of Mr. Fisher's specialized knowledge and training, and the steps he took to inspect and place the ladder.

Because Ms. Villere has shown an absence of facts to support Mr. Fisher's assertion that her property was unreasonably dangerous, and Mr. Fisher failed to produce factual support sufficient to establish the existence of a genuine issue of material fact as to this factor, the remaining elements—Ms. Villere knew or should have known of the unreasonable risk of harm and Mr. Fisher's damages were caused by the defect—to establish premises liability under Articles 2317 and 2317.1 fail.

---

[9] In *Allen v. Lockwood*, 14-1724 (La. 2/13/15), 156 So.3d 650, 653, the Supreme Court explained in pertinent part:

> . . . once a defendant points out a lack of factual support for an essential element in the plaintiff's case, the burden then shifts to the plaintiff to come forward with evidence (by affidavit, deposition, discovery response, or other form sanctioned by La. Code Civ. P. arts. 966 and 967) to demonstrate that he or she would be able to meet his or her burden at trial. As *Bufkin* demonstrated, "our jurisprudence does not preclude the granting of a motion for summary judgment in cases where the plaintiff is unable to produce factual support for his or her claim that a complained-of condition or things is unreasonably dangerous." *Bufkin* [*v. Felipe's Louisiana, LLC*], [14-0288 (La. 10/15/14), 171 So.3d 851], 2014 WL 5394087, at pp. *7-8 (Guidry, J., concurring); *see also Reagan v. Recreation and Park Com'n for Parish of East Baton Rouge*, 13-2761 (La. 3/14/14), 135 So.3d 1175 (Guidry, J., dissenting in writ denial). Rather, in such a procedural posture, the court's obligation is to decide "if there [is] a genuine issue of material fact as to whether the [complained-of condition or thing] created an unreasonable risk of harm . . . ." *Broussard* [*v. State Ex Rel. Office of State Buildings*], 12-1238 [(La. 4/5/13)], at p. 9, 113 So.3d [175] at 184, n. 5.

*See also*, Thomas E. Richard, *Contemporary Issues in Louisiana Law: Torts,* 43 S.U. L. Rev. 79, 82 (2015)("If the [risk-utility] test results in a factual determination that the complained of premises hazard is not an unreasonably dangerous condition, defendant has no liability because the defendant did not breach the duty owed to the plaintiff. In such a case, summary judgment in favor of the defendant would be appropriate because reasonable minds could only agree that the premises condition is not unreasonably dangerous.")(citing *Lockwood, supra*)(footnote omitted).

*La. C.C. 2315*

Mr. Fisher asserts that the district court erred in dismissing his claim of negligence pursuant to La. C.C. art. 2315 because Ms. Villere did not raise it as an issue in her motion for summary judgment.

Louisiana Code of Civil Procedure Article 966(F) provides that "[a] summary judgment may be rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time." In *Cutrone v. English Turn Prop. Owners Ass'n, Inc.*, 19-0896, p. 9 (La. App. 4 Cir. 3/4/20), 293 So.3d 1209, 1215-16, this Court, in addressing a similar raised issue, explained that "the purpose of the restriction codified in La. C.C.P. art. 966(F) is to inform the opponent of the summary judgment motion of the elements on which there allegedly is no genuine issue of material fact and to avoid surprise."

First, as Ms. Villere notes, Mr. Fisher did not object to the district court's judgment dismissing all of his claims. Second, although Ms. Villere did not separately address negligence under La. C.C. art. 2315 in her motion for summary judgment, the duty owed by a property owner is the same under both the custodian liability theory of La. C.C. art. 2317 and the negligence theory of La. C.C. art. 2315 in that a plaintiff must prove that an unreasonably dangerous condition existed. *See Cheramie v. Port Fourchon Marina, Inc*, 16-0895, p. 4 (La. App. 1 Cir. 2/17/17), 211 So.3d 1212, 1215;[10] *Fontanille*, 11-0882, 2012 WL 4754154, at

---

[10] In *Cheramie*, the appellate court explained that generally, "[t]he owner or custodian must discover any unreasonably dangerous condition on the premises and either correct the condition or warn potential victims of its existence." *Id.*, 16-0895, 211 So.3d at 1215 (citing *Pryor v. Iberia Par. Sch. Bd.*, 10-1683 (La. 3/15/11), 60 So.3d 594, 596). "This duty is the same whether based on custodial liability under La. C.C. arts. 2317, 2317.1 . . . or negligence under La. C.C. art. 2315A." *Id.* (citation omitted)(footnote omitted). The court continued that "[u]nder either theory, the plaintiff has the burden of proving that: (1) the property which caused the damage was in the 'custody' of the defendant; (2) the property had a condition that created an unreasonable risk of harm to persons on the premises; (3) the unreasonably dangerous condition was a cause in fact of

*5.[11] Failure of a plaintiff to show that the property had a condition that created an unreasonable risk of harm to persons on the premises results in the defendant owing no duty to the plaintiff under either theory of recovery under Article 2315 or 2317. *See Cheramie*, 16-0895, p. 4, 211 So.3d at 1215; *Fontanille,* 11-0882, 2012 WL 4754154, at *5. To the extent that Mr. Fisher cannot show that Ms. Villere's property was unreasonably dangerous so as to invoke a duty owed to Mr. Fisher, Ms. Villere is entitled to judgment as a matter of law.

## CONCLUSION

Based on our *de novo* review, we find the district court did not err in granting Ms. Villere's motion for summary judgment and dismissing all of Mr. Fisher's claim with prejudice. The district court's judgment is affirmed.

**AFFIRMED**

---

the resulting injury; and (4) the defendant had actual or constructive knowledge of the risk. *Id.*, (citation omitted).

[11] In *Fontanille,* this Court concluded that the threshold issue for both the negligence and the premise liability issues was whether the defendant's property was "unreasonably dangerous" to the plaintiff because the defendant would owe no duty under either theory of recovery unless her property was found to be "unreasonably dangerous." *Id.*, 11-0882, 2012 WL 4754154, at *5.